# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:17CV543

| | |
|---|---|
| JESSICA PECK, ) </br> ) </br> **Plaintiff,** ) </br> ) </br> v. ) </br> ) </br> NANCY A. BERRYHILL, ) </br> **Acting Commissioner of Social Security,** ) </br> ) </br> **Defendant.** ) </br> _____ ) | **MEMORANDUM AND** </br> **RECOMMENDATION** |

This matter is before the Court on the parties' cross motions for summary judgment (# 11, 17). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits. The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons set forth below, the Court recommends that Plaintiff's motion for summary judgment be denied and the Commissioner's motion for summary judgment be granted.

**I.      Procedural History**

On September 13, 2012, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. (Transcript of Administrative Record ("T.") 19.) On September 20, 2012, Plaintiff also filed a Title XVI application for supplemental security income. (T. 19.) In both applications, Plaintiff alleged a disability onset date of March 1, 2008. (T. 19.)

The Social Security Administration denied Plaintiff's claim initially on March 20, 2013. (T. 19.) The claims were denied upon reconsideration on August 5, 2013. (T. 19.) On September 12, 2013, Plaintiff filed a written request for a hearing. (T. 19.)

On August 3, 2015 and May 13, 2016, video disability hearings were held before an Administrative Law Judge ("ALJ").[1] (T. 19.) Dr. Jewel Euto and Daniel Turner appeared at the hearings, respectively, and served as the vocational expert ("VE") at each hearing. (T. 19.) Plaintiff was informed of her right to representation, yet she chose to appear and testify without the assistance of an attorney or other representative. (T. 19.)

On August 24, 2016, the ALJ issued a decision finding that Plaintiff was not disabled from March 1, 2008, through the date of her decision. (T. 19-34.) Plaintiff requested review of the ALJ's decision. (T. 9.) The Appeals Council denied Plaintiff's request for review. (T. 9-11.) On September 11, 2017, Plaintiff filed the instant action seeking review of the Commissioner's final decision. See Compl. (# 1)

## II. Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant

---

[1] Plaintiff appeared in Charlotte, North Carolina, and the ALJ presided over the hearings from Florence, Alabama. (T. 19.)

is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Under the five-step sequential evaluation, the Commissioner must consider each of the following, in order: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or equal the severity of one or more of the listing of impairments contained in Appendix I of 20 C.F.R. Part 404, subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 653 n.1.

At the first two steps of the sequential evaluation, the burden is on the claimant to make the requisite showing. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If a claimant fails to satisfy his or her burden at either of these first two steps, the ALJ will determine that the claimant is not disabled and the process comes to an end. Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir. 2015). The burden remains on the claimant at step three to demonstrate that the claimant's impairments satisfy a listed impairment and, thereby, establish disability. Monroe, 826 F.3d at 179.

If the claimant fails to satisfy his or her burden at step three, however, then the ALJ must still determine the claimant's RFC. Mascio, 780 F.3d at 635. After determining the claimant's RFC, the ALJ proceeds to step four in order to determine whether the claimant can perform his or her past relevant work. Id. The burden is on the claimant to demonstrate that he or she is unable to perform past work. Monroe, 826 F.3d at 180. If the ALJ determines that a claimant is not cable of performing past work, then the ALJ proceeds to

3

step five. Mascio, 780 F.3d at 635.

At step five, the ALJ must determine whether the claimant can perform other work. Id. The burden rests with the Commissioner at step five to prove by a preponderance of the evidence that the claimant is capable of performing other work that exists in significant numbers in the national economy, taking into account the claimant's RFC, age, education, and work experience. Id.; Monroe, 826 F.3d at 180. Typically, the Commissioner satisfies her burden at step five through the use of the testimony of a vocational expert ("VE"), who offers testimony in response to a hypothetical question from the ALJ that incorporates the claimant's limitations. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180. If the Commissioner satisfies her burden at step five, then the ALJ will find that the claimant is not disabled and deny the application for disability benefits. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180.

**III.    The ALJ's Decision**

In her August 24, 2016, decision, the ALJ ultimately found that Plaintiff was not disabled under sections 216(i), 233(d), and 1614(a)(3)(A) of the Social Security Act. (T. 33-34.) In support of this conclusion, the ALJ made the following specific findings:

(1) The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.

(2) The claimant has not engaged in substantial gainful activity since March 1, 2008, the alleged onset date (20 C.F.R. §§ 404.1520(b), 404.1571 et seq., 416.920(b), and 416.971 et seq.).

(3) The claimant has the following severe impairments: a history of polysubstance abuse; a bipolar affective disorder, not otherwise specified; a borderline personality disorder; a history of migraine headaches; obesity (220 pounds); generalized anxiety disorder;

hypertension; a history of bicuspid aortic valve Wolf-Parkinson-White Syndrome; and degenerative disc disease of the lumbar spine with a history of disc herniation at L5-S1 (20 C.F.R. §§ 404.1520(c), 416.920(c)).

(4) Through January 1, 2016, the claimant's impairments, including the substance abuse disorder, met Medical Listing 12.09 for substance abuse disorders of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 416.920(d)).

(5) If the claimant stopped the substance abuse, the remaining limitations would cause more than a minimal impact on her ability to perform basic work activities; thus, the claimant would continue to have a severe impairment or combination of impairments.

(6) If the claimant stopped the substance use/abuse, she would not have an impairment or combination of impairments that meets or medially equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 416.920(d)).[2]

(7) If the claimant stopped the substance use during the period from the alleged onset date of disability through January 1, 2016, and during the period after the claimant stopped substance abuse as of January 1, 2016, the claimant would have (before January 1, 2016) and has (as of January 1, 2016), the RFC to perform a range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except she can occasionally lift and/or carry ten pounds and frequently lift and/or carry less than ten pounds. She can stand and/or walk in combination, with normal breaks, for at least two hours during an eight-hour workday and she can sit, with normal breaks, for up to eight hours during an eight-hour workday. The claimant can occasionally climb ramps and stairs and should never climb ladders, ropes, or scaffolds. The claimant can frequently balance and occasionally stoop, kneel, crouch and/or crawl. She can frequently perform fine and gross manipulation with her hands bilaterally. She should avoid concentrated exposure to extreme hot and cold and working in areas of vibration. The claimant should avoid exposure to industrial hazards including working at unprotected heights, working in close proximity to moving dangerous machinery, and the operation of motorized vehicles and equipment. She can perform simple routine tasks

---

[2] The ALJ found that even if Plaintiff stopped the substance use, the remaining limitations would not meet or equal Listings 1.04, 12.04, 12.06, or 12.08. (T. 26.)

5

requiring no more than short simple instructions and simple work-related decision-making with few workplace changes. She can have occasional interactions with co-workers and supervisors and no interactions with members of the general public.

(8) Even if the claimant stopped the substance use, she would not be able to perform her past relevant work (20 C.F.R. §§ 404.1565, 416.965).[3]

(9) The claimant was born on May 16, 1979, and she was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563, 416.963).

(10) The claimant has a limited education, and she is able to communicate in English (20 C.F.R. §§ 404.1564, 416.964).

(11) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See Social Security Ruling ("SSR") 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(12) If the claimant stopped the substance use, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she could perform (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966).[4]

(13) The substance abuse disorder is a contributing factor material to the determination of disability through January 1, 2016, because the claimant would not be disabled if she stopped the substance abuse (20 C.F.R. §§ 404.1520(g), 404.1535, 416.920(g), and 416.935). Because the substance abuse disorder is a contributing factor material to the determination of disability through January 1, 2016, and after that date the claimant stopped substance abuse, she has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

---

[3] Plaintiff has past relevant work as a server-full time/informal waitress. (T. 32.)

[4] The VE testified that Plaintiff would be able to perform the requirements of representative occupations such as the following: gauger, which has 454,000 jobs nationally; a document preparer, which has 314,800 jobs nationally; and stuffer, which has 367,700 jobs nationally. (T. 33.)

6

(T. 19-34.)

## IV. Standard of Review

Title 42, United States Code, Section 405(g) provides that an individual may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review is limited in that the district court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); accord Monroe, 826 F.3d at 186. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig, 76 F.3d at 589 (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's final decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she was not disabled is supported by substantial evidence in the record, and whether the ALJ reached her decision based on the correct application of the law. Id.

## V. Discussion[5]

### A. The ALJ properly evaluated Plaintiff's limitations arising from her

---

[5] The analysis at each step in the sequential evaluation builds on the previous step. Thus, the Court has addressed Plaintiff's arguments in the order they would arise within the sequential evaluation, not in the order she presents them in her brief.

**mental impairments.**

Plaintiff argues that the ALJ erred by failing to give a complete function-by-function analysis of the nonexertional mental functions associated with Plaintiff's difficulties in the broad areas of functioning. Pl.'s Mem. Supp. (# 12) at 14-19. Relying on SSR 96-8p, Plaintiff contends that the ALJ did not make a complete mental RFC finding. Id. at 15-16. Citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), Plaintiff contends that the ALJ erred by failing to make a finding regarding Plaintiff's ability to stay on task for a full workday and workweek. Id. at 16. Plaintiff concludes that ALJ's errors require that the case be remanded. Id. at 19.

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); accord Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir. 2011). SSR 96-8p provides that the ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Monroe, 826 F.3d at 189 (quoting SSR 96-8p). In formulating a RFC, the ALJ is not required to discuss each and every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). The ALJ is, however, required to build a logical bridge from the evidence of record to his or her conclusion. Monroe, 826 F.3d at 189; see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). With respect to the function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his other work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

8

In Mascio, the Fourth Circuit Court of Appeals held that limitations in concentration, persistence, or pace cause work-related limitations with staying on task, and while the ALJ may find that no limitations are required, an explanation is necessary. 780 F.3d at 638. The Fourth Circuit Court of Appeals specifically held:

> Perhaps the ALJ can explain why [the plaintiff's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [the plaintiff's] [RFC]. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the plaintiff's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ gave no explanation, a remand is in order.

Id. (internal citation omitted and emphasis added).

In the instant case, the ALJ specifically found the following with respect to Plaintiff's mental RFC:

> [Plaintiff] can perform simple routine tasks requiring no more than short simple instructions and simple work-related decision-making with few workplace changes. [Plaintiff] can have occasional interactions with co-workers and supervisors and no interactions with members of the general public.

(T. 28.)

The Court finds that Ponder v. Berryhill, No. 1:15-CV-00289-RJC, 2017 WL 1246350 (W.D.N.C. Mar. 31, 2017), serves as persuasive authority. In the instant case as in Ponder, the ALJ did not specifically use the words "stay on task," but her analysis reflects that the RFC is supported by substantial evidence. Id. at *4. Moreover, as the Court noted in Ponder, "Mascio only requires a remand when an ALJ's opinion is sorely lacking in a manner that frustrates meaningful review." Id. (quoting White v. Colvin, No. 3:15-CV-00197-FDW, 2016 WL 3381265, at *5

9

(W.D.N.C. June 14, 2016) (quotation omitted)).

In reaching her mental RFC in the instant case, the ALJ specifically found the following:[6]

> In April 2010 during a period of being clean and sober for 90 days, the claimant reportedly was doing very well on medications. The claimant's functioning improved medications in June 2010 and [sic] when she stopped using drugs and alcohol. The consultative psychological examiner, Dr. Hogan, saw the claimant during a period of remission, with the claimant reportedly having been clean for 60 days. She found that the claimant was able to understand, retain, and follow instructions and that she was able to sustain attention to tasks. <u>The record shows no more than more than moderate limitations during periods of sobriety</u>. At the supplemental hearing during a period in which the claimant had been clean for several months, she reported daily activities including taking her son to day care and using an alarm clock to make sure she gets up. She said she reads to her children and watches them play, with other activities including swimming and going out to eat when money allows.[7] The claimant also reported improved social interactions, a lack of arrests, the ability to care for her children, and she has been actively involved with her medical treatment.

(T. 27) (internal citations omitted and footnote and emphasis added). The ALJ further found:

> [D]uring the claimant's periods of sobriety, her functional capacity improves. During a consultative medical examination in February 2013 when she was sober although drinking and doing drugs intermittently, a consultative medical examiner, Dr. Steinmuller found that the claimant was able to understand, retain and follow instructions and appeared to have adequate attention to perform simple repetitive tasks. He noted that she related in a calm fashion during the examination and was attentive to her infant son. The

---

[6] The Court will not be required to "mine the facts in the record to justify the ALJ's decision." See Pl.'s Mem. Supp. (# 12) at 18.
[7] "[A]ctivities of daily living is a factor for the ALJ to consider in determining RFC." Cummings v. Berryhill, No. 8:16-CV-111-CMC-JDA, 2017 WL 9289409, at *10 n.6 (D.S.C. Mar. 22, 2017).

10

> undersigned notes that at the supplemental hearing, when the claimant
> presented as clean and sober for more than five months, her demeanor
> and interactions were improved from the first hearing, during a period
> of substance abuse.

(T. 30) (internal citations omitted).

Plaintiff has not pointed to a shred of evidence that contradicts or undermines the ALJ's analysis. In sum, Plaintiff has failed to show legal error by the ALJ or that her RFC finding is not supported by substantial evidence. See Craig, 76 F.3d at 589 (recognizing that the District Court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard."). Therefore, Plaintiff's first assignment of error is overruled.

### B. The ALJ's reliance on the VE's testimony was appropriate.

Next, Plaintiff argues that the ALJ erred by accepting testimony from a VE that "appears" to conflict with the Dictionary of Occupational Titles ("DOT")[8] without getting an explanation from the VE. Pl.'s Mem. Supp. (# 12) at 5-14. In particular, Plaintiff asserts that the ALJ did not specifically inquire of the VE about apparent conflicts between the VE's testimony and the DOT. Id. at 6. Plaintiff concludes that in light of the ALJ's error, her decision must be reversed. Id. at 14.

Pursuant to SSR 00-4p, an ALJ has an affirmative duty to elicit an explanation from a VE regarding any "apparent unresolved conflict" between the VE's testimony and the

---

[8] The DOT, which is published by the Department of Labor, gives detailed physical requirements for a variety of jobs. Morgan v. Berryhill, No. 16-1141, 2017 WL 4280787, at *3 n.4 (D. Md. Sept. 27, 2017). While information found in the DOT is not conclusive evidence on the existence of jobs in the national economy, it can be used to create a rebuttable presumption on the matter. Id.

11

DOT. SSR 00-4p specifically provides:

> Occupational evidence produced by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.
> Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The [ALJ] must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

In <u>Pearson v. Colvin</u>, 810 F.3d 204 (4th Cir. 2015), the Fourth Circuit Court of Appeals held that the ALJ must resolve apparent conflicts between the VE's testimony and the DOT before relying on the VE testimony. <u>Id.</u> at 207-09; <u>Best v. Berryhill</u>, No. 4:16-CV-268-D, 2017 WL 6626320, at *1 (E.D.N.C. Dec. 28, 2017). "[T]he ALJ need only identify 'apparent' conflicts—statements that are seeming real or true, but not necessarily so." <u>Gordon v. Berryhill</u>, No. 3:16-CV-130, 2017 WL 5759940, at *4 (W.D.N.C. Nov. 28, 2017) (quotation omitted).

### 1. Short simple instructions

Plaintiff initially argues that the ALJ limited her to simple routine tasks requiring <u>no more than short simple instructions</u>. Pl.'s Mem. Supp. (# 12) at 8-9 (citing T. 20.) (emphasis added)). Plaintiff represents that according to the DOT, the job document preparer has a Reasoning Level of 3, and the jobs gauger and stuffer both have a Reasoning

12

Level of 2.⁹  Id. at 9.

In Henderson v. Colvin, 643 F. App'x 273 (4th Cir. 2016), the Fourth Circuit Court of Appeals held that there was an apparent conflict between an RFC limiting the plaintiff to one-to-two step instructions and a GED Reasoning Code 2.  Id. at 277.  A GED Reasoning Code 2 requires the ability to understand detailed instructions.  Id.

In the instant case, Plaintiff's argument must fail because "[w]ork requiring a reasoning level of 2 'specifically caveats that the instructions would be uninvolved—that is, not a high level of reasoning.'" Nance v. Berryhill, No. 5:16-CV-00230-RJC, 2018 WL 1176064, at *5 (W.D.N.C. Mar. 6, 2018) (quoting Pippen v. Astrue, No. 1:09-CV-308, 2010 WL 3656002, at *7 (W.D.N.C. Aug. 24, 2010)).  Similarly, other courts in this District have found that GED Reasoning Code 3 is consistent with the ability to perform only "simple" work.  Thomas v. Berryhill, No. 3:16-CV-00836-MOC, 2017 WL 3595494, at *5 (W.D.N.C. Aug. 21, 2017) (citing Clontz v. Astrue, No. 2:21-CV-12-FDW, 2013 WL 3899507, at *5 n.6 (W.D.N.C. Jul. 29, 2013)).

In sum, there was no "apparent conflict" for the VE to resolve, and the ALJ's reliance on the VE's testimony was appropriate.

### 2. Contact with supervisors, coworkers, and the public

Plaintiff next argues that there "may or may not" be a conflict between the VE's

---

⁹ "The DOT defines six reasoning levels which ascend in increasing levels of complexity." Weaver v. Colvin, No. 1:10CV582, 2013 WL 3989561, at *10 n. 12 (M.D.N.C. Aug. 2, 2013); see Frye v. Berryhill, No. 1:16CV543, 2017 WL 3242259, at *6 (M.D.N.C. July 28, 2017) (recognizing that the DOT involves a six-level reasoning scale).

testimony and the DOT. Pl's Mem. Supp. (# 18) at 10-14. In particular, Plaintiff contends that there may be a conflict related to the ALJ's finding that Plaintiff was limited to occasional contact with coworkers and supervisors and no interaction with members of the public and the O*Net.[10] Id. at 10-12.

Assuming, arguendo, that the VE's testimony actually conflicts with the O*Net, there is no requirement that the VE's testimony be consistent with the O*Net. Spurlock v. Berryhill, No. 1:17CV411, 2018 WL 791302, at *8 (M.D.N.C. Feb. 8, 2018); see Fender v. Berryhill, No. 1:17CV00041-RJC, 2018 WL 1536485, at *4 (W.D.N.C. Mar. 29, 2018) ("The Court does not believe that the ALJ has an affirmative duty to seek out and resolve apparent conflicts between the VE's testimony and O*Net[.]"); Bushaw v. Berryhill, No. 1:17-CV-00192-FDW, 2018 WL 1972711, at *5 (W.D.N.C. April 26, 2018) ("[T]his Court joins other district courts in rejecting Plaintiff's argument and request to impose an obligation on the ALJ unsupported by law."); Webb v. Berryhill, No. 1:17CV341, 2018 WL 2198829, at *6 (M.D.N.C. May 14, 2018) ("[T]here is no requirement that the VE's testimony comply with [the O*Net]."). Therefore, Plaintiff's second assignment of error is overruled.

## VI. Conclusion

In light of the foregoing, the Court RECOMMENDS that Plaintiff's motion for summary judgment (# 11) be DENIED, and the Commissioner's motion for summary

---

[10] The Occupational Information Network ("O*Net") "is an online database providing hundreds of occupational definitions." Irvine v. Destination Wild Dunes Management, Inc., 106 F. Supp. 3d 729, 734 n.4 (D.S.C. 2015).

judgment (# 17) be GRANTED.

Signed: May 28, 2018

*Dennis L. Howell*

Dennis L. Howell
United States Magistrate Judge

## **Time for Objections**

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal.  See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).